SCANLAN et al. v. TENNEY et al.

(Circuit Court, D. Connecticut. February 15, 1896.)

NEGLIGENCE—CARRIERS OF PASSENGERS.

Plaintiff was a passenger on a steamboat managed by defendants. The boat arrived at the wharf, where plaintiff was to land, at 8:30 p. m., on an evening when the sun had set at 7:25, and the moon had risen at 8:21, there being some clouds in the sky. There was a lamp on the boat, the light from which was thrown by a reflector away from the gang-way by which passengers were to land, and there was a light on the wharf, at some distance from the gang-way, which would be directly in the eyes of passengers landing from the boat. The gang-way in the boat's side was 4 feet wide, and was opposite a brow or slope in the side of the wharf which was over 6 feet wide, but the gang-plank by which passengers were to land was only 28 inches wide, and had no railing. In passing from the boat to the wharf, plaintiff fell, and was injured. *Held*, that defendants were negligent in failing to provide sufficient light to guide passengers in landing, and were liable for the damage suffered by plaintiff.

Case, Eley & Case, for plaintiffs.
F. T. Brown and A. F. Eggleston, for defendants.

TOWNSEND, District Judge. This is a hearing in damages on a default in an action brought by James J. Scanlan and Mary F. Scanlan, his wife, to recover $25,000 for injuries claimed to have

been sustained through the negligence of defendants. Upon the evidence therein, I find the following facts: The plaintiffs are citizens of the city of St. Louis, state of Missouri, and the defendants were, on the 29th day of June, 1893, the executors of the last will and testament of Albert P. Sturtevant, and, as such, were engaged in managing and sailing a steam vessel called the Osprey, which carried passengers from New London, in the state of Connecticut, to a wharf near the Ft. Griswold House, at Eastern Point, opposite said New London. At about half past 8 o'clock in the evening on said 29th day of June, said Mrs. Scanlan, being a passenger from New London on said boat, in attempting to pass therefrom onto said wharf at said Ft. Griswold House, fell, and sustained painful injuries, including a sprained ankle, from which she had not entirely recovered at the date of this hearing. On said evening the sun had set at 7:25, and the moon rose at 8:21. It was a fairly clear night, and there was a lamp on the forward end of the engine room, about 6 feet above the deck, and about 15 feet from the center of the gang-way near where Mrs. Scanlan fell. Said lamp held a pint of kerosene oil, and had an 8-inch reflector, and glass sides, 8 by 12 inches in size, and was lighted at the time of the accident. The gang-way was 4 feet wide. There was a depression or brow in the surface of the wharf, which gradually sloped down to about 2 feet below the level of the wharf at its edge, at which point it was 6 feet and 8½ inches wide. When the boat came up to the wharf on the night of the accident, the tide was about seven-eighths high, and there was a distance of some 15 to 18 inches between the level of the deck and the level of the foot of the slope of said brow. In going onto the wharf, the plaintiff fell from the boat or the gang-plank down into said brow. Whether the gang-plank was or was not put out it is impossible to say with certainty, and, in the view herein taken, it is immaterial. If it were necessary to the decision of the case, I should find, from the preponderance of testimony, that it was put out.

It is claimed that, at the time of the accident, there was sufficient light from the twilight and moon alone, provided such light were unobstructed, to enable a person to distinguish said gang-plank. But there were some clouds that evening. The moon rose less than 10 minutes before the accident, from a point behind some of the houses on the shore, and there was a light on the wharf 69 feet distant, which, while it would not have thrown any light down into said brow, would have been almost directly in the eyes of a person passing off said gang-way. As to the light on the forward end of the engine room, its reflector projected the rays forward, and a stanchion slightly interfered with its side rays. Other passengers were passing off the boat or gang-plank at about the same time. Comstock, who had charge of putting out the gang-plank, testified that a person coming on to the gang-plank would shut said light off from it, and the captain of the boat acknowledged that said light would be shut off by persons getting in front of it. Said gang-plank was 28 inches wide, without any side rails. It is claimed that it was suitable for such a boat, and that it

would have been impracticable either to use one as wide as said brow or slope, or to have a railing thereon.   It is further claimed that as defendants were only managing the boat, and had no control over the wharf, they were not liable for the absence of lights on the wharf.

Common carriers of passengers by water, as well as by land, are bound to provide reasonably safe means of exit for passengers using due care.   Inasmuch as the gangway was 4 feet wide, and the slope 6 feet and $8\frac{1}{2}$ inches wide, a person of ordinary prudence would be justified in supposing either that the gang-plank would, at least, be of substantially equal width with the gang-way, or that otherwise there would be some warning as to its size or location, such as a railing thereon, or a light so located as to throw its rays onto said gang-plank or into the slope.   It may be assumed that a railing was impracticable, and that defendants had no control over the wharf.   In that event, however, the reasonable care required of the defendants, in order to comply with their legal duty of furnishing a safe exit, required that they should adopt some other suitable means for warning the passengers of the danger involved in passing, in such circumstances, over a gang-plank only 28 inches wide.   I find that the light which was provided was insufficient; that, if there was any light from the moon or the lamp on the wharf, it was quite as likely to interfere with a view of said gang-plank as to assist a person in passing over it.   The plaintiff has shown by a preponderance of evidence that the defendants were negligent, and that she was not guilty of negligence which contributed to cause the injury.   I assess her damages, including expenses for physicians, medicines, etc., at $1,500.

Let judgment be entered for plaintiffs in accordance with this opinion.